**AAA EQUIPMENT SERVICE COMPANY, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 78-1756.**

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1979.

Decided May 21, 1979.

---

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

ROSS, Circuit Judge.

This case is here on a petition for review and a cross-application for enforcement of an order of the National Labor Relations Board (Board) finding that AAA Equipment Service Company (company) violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by discharging one of its employees, Frank Katzenberger (employee). The Board held that by refusing to allow the employee to have his union steward present during an investigatory interview and by discharging the employee for refusing to participate in the interview without his union representative, the company committed an 8(a)(1) violation. We grant the petition for review and decline to enforce the Board's order.

A hearing was held before an Administrative Law Judge (ALJ) at which testimony was received from the employee; from Mr. Don Fairfield, his foreman; and from Mr. Richard Goslin, service manager of the company. In her decision and proposed order the ALJ credited the testimony of Fairfield [1] and refused to credit both the testimony of the employee and Goslin where their testimony was in conflict with the testimony of Fairfield. The General Counsel did not challenge this credibility determination in the exceptions which were filed to the decision of the ALJ. We therefore will recite the relevant facts based on the ALJ's credibility determination.

The employee did not report for work on Monday, February 21, 1977. He did call to report his absence that day because of "personal problems" but did not talk to his foreman, Fairfield. It appears that such absence without pay is permitted under the union contract. The employee was a mechanic on a "preventive maintenance" truck which serviced customers of the company.

The next day the employee came back to work and in the afternoon had a conversa-

Gary A. Eberhardt of Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., for petitioner; Joseph B. Pereles, St. Louis, Mo., on brief.

William Wachter of N. L. R. B., Washington, D. C., for respondent; John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief.

1. At the time of the hearing the foreman, Mr. Fairfield, was no longer employed by the company. At the time of the incident he was a member of the same union as the employee.

tion with Fairfield concerning the failure of the employee to make minor repairs on his preventive maintenance route, as he had been directed to do rather than writing them up in his report. The employee replied that he "forgot." Fairfield then asked him why he had been absent the prior day and the employee told him, "It's none of anybody's fucking business what I do when I take off." Fairfield told him that he would have to tell his employer what the employee had said. if he was asked. The employee said, "I don't give a fuck what you does. It's none of their fucking business or yours either one." The employee then stated that "the next time you talk to me, I want my shop steward."

Fairfield reported this conversation to Goslin the next day. Goslin decided to talk to the employee about both matters Fairfield had discussed with the employee. Later that day Goslin and Fairfield were in the parking lot when the employee drove in with his truck and parked. Goslin walked up to the back of the truck and said, "Frank, I want to talk to you." The employee was working on his records and did not get out for a few minutes. His first words were: "I want my shop steward." Goslin continued to tell the employee he wanted to talk to him and the employee continued hollering, "Get your shop steward." When Fairfield did not get the shop steward, the employee turned and started to walk off. Goslin told him that "if you walk off and leave me here and refuse a direct order, you are terminated." The employee said, "Fuck you, I'm getting the shop steward." Goslin then fired the employee. Fairfield testified that during this conversation, Goslin was never given the opportunity by the employee to tell him what he wanted to talk to him about.

The ALJ determined that—

Goslin was attempting to have a run-of-the-mill conversation with Katzenberger on the parking lot that involved "the giving of instructions or training or needed corrections of work techniques"; that there was no reasonable basis for Katzenberger "to fear that any adverse impact may result from the interview," even if the chance encounter on the parking lot can be termed an investigatory interview; that in all relevant circumstances there was "no reasonable basis for him to seek the assistance of his representative," and he was in fact demanding the presence of his Union steward not because he reasonably anticipated disciplinary action but because, as he announced to Fairfield and admitted in his testimony, he had resolved not to talk to Fairfield or Goslin without having the shop steward present; and that the Respondent discharged Katzenberger for repeatedly refusing to permit Goslin even to state the subject about which Goslin wished to talk to him without a shop steward present, and for walking away while Goslin was trying to do so.

The ALJ recommended that the complaint be dismissed.

The Board, after accepting the factual situation recited by the ALJ, found that "Katzenberger had reasonable grounds to fear adverse consequences from Respondent's continued investigation of his conduct." It also found that "Katzenberger had a reasonable basis for fearing an adverse impact and hence for requesting union representation and that Respondent discharged Katzenberger because he was insisting on that right." The Board disagreed with the ALJ's findings that Goslin "discharged Katzenberger for repeatedly refusing to permit Goslin even to state the subject about which Goslin wished to talk with him without a shop steward present, and for walking away while Goslin was trying to do so."

The Board ordered the company to offer the employee immediate and full reinstatement to his former job or an equivalent position, and to make him whole for his loss of earnings with interest. It also issued the customary, corresponding cease and desist order and required the posting of the usual notice.

The Board claims that under section 7 of the National Labor Relations Act, 29 U.S.C. § 157, an employee has a right to request

representation as a condition of participation in an interview with employer representatives where the employee reasonably believes the interview may result in the imposition of discipline, *citing NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975) and *International Ladies Garment Workers' Union v. Quality Mfg. Co.,* 420 U.S. 276, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975). With this proposition of law the company agrees. The argument is whether or not the facts in this case justified the employee's claim that the conversation which Goslin sought to hold with him was an investigatory interview which he reasonably believed might result in disciplinary action against him. The ALJ did not believe that the employee was so justified in his claim, and we agree with her.[2]

We have studied the complete transcript, the record and the briefs carefully and we agree with the determination of the ALJ as hereinbefore set forth on pages 3 and 4 of this opinion. We further agree with her finding that "the General Counsel has failed to establish, by a preponderance of the credible and probative evidence, that the Respondent, as alleged in the complaint, terminated Katzenberger because he refused to participate in an investigatory interview without his shop steward, in violation of section 8(a)(1) of the Act.

The employee claimed that he felt that he could be disciplined in the rejected interview and gave this reason:

Because of the facts of coming into the parking lot and seeing the shop foreman and the service manager walking up and down the parking lot as if they were waiting for someone which it turned out to be me, and as I parked the van, they had to step out of the way to make clearance for me to pull up to the building and park. Then due to the fact that I sat in the van not knowing that it was for me until I seen Mr. Goslin in the rear view and screamed out, "Katzenberger, get out of there, I want to talk to you."

In turn, I got out and when I approached him, he shouted out again, he said, "What is it you told Don Fairfield yesterday." That is reason enough to know then and there I would be disciplined.

Seeing the shop foreman and service manager "walking up and down the parking lot as if they were waiting for someone which it turned out to be me" is no justification whatsoever. His reason that Goslin screamed at him to get out is tempered by the credited testimony of Fairfield who testified that Goslin walked up to the back of the truck and said, "Frank, I want to talk to you."

The other reason given, that Goslin said, "What is it you told Don Fairfield yesterday," is belied by the credited testimony of Fairfield who testified that the employee refused to let Goslin state *what* he wanted to talk about. Even if true, the statement should not reasonably cause the employee to believe he might be disciplined since he admitted that at all times he felt he had done nothing for which discipline was permitted under the contract.

The Board argues that even though the employee felt he had a right to be absent, he could have feared disciplinary action since the contract did not "limit the company's obvious authority to compel adequate

---

2. In *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) the Supreme Court held:

We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial." *Id.* at 496–97, 71 S.Ct. at 469.

explanations for all absences from work, and to discipline employees who give inadequate explanations." This is mere speculation and may be answered by the fact, according to Fairfield's credited testimony, that on the prior day Fairfield told the employee that he agreed with him that he did not have to give his employer an exact reason for his absence. The only testimony explaining the request for disclosure of the reason for the absence was Goslin's, who needed "to determine if they're going to be there the next day in order for scheduling our jobs and so forth." It was the policy of the company to ask for the reason, but the request alone does not reasonably imply possible disciplinary action in the circumstances of this case.

We agree with the rationale of the Ninth Circuit expressed in *Alfred M. Lewis, Inc. v. NLRB,* 587 F.2d 403 (9th Cir. 1978) as follows:

> It should be acknowledged that a supervisory interview in which the employee is questioned or instructed about work performance inevitably carries with it the threat that if the employee cannot or will not comply with a directive, discharge or discipline may follow; but that latent threat, without more, does not invoke the right to the assistance of a union representative. The right of representation arises when a significant purpose of the interview is to obtain facts to support disciplinary action that is probable or that is being seriously considered.

*Id.* at 410.

For the foregoing reasons the petition for review is granted and the cross-application for enforcement is denied.