**SPARTAN STORES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1156.

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1980.

Decided Aug. 15, 1980.

Paul H. Townsend, Seth M. Lloyd, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for petitioner.

Elliott Moore, Allison W. Brown, Jr., Deputy Associate Gen. Counsel, Jesse I. Etelson, Paul Spielberg, N.L.R.B., Washington, D. C., Bernard Gottfried, Director, Region 7, N.L.R.B., Detroit, Mich., for respondent.

Before CELEBREZZE, KEITH and BROWN, Circuit Judges.

CELEBREZZE, Circuit Judge.

Spartan Stores, Inc., (Spartan) petitions for review of a decision of the National Labor Relations Board (NLRB) that Spartan had violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by discharging one of its employees, Lannie Daniell (employee). The Board has cross-applied for enforcement of its order, which is reported at 235 N.L.R.B. No. 75 (1978). The Board held that by discharging Daniell for asserting his protected § 7 right to refuse to participate in an interview he reasonably believed could result in disciplinary action without union representation, Spartan committed a § 8(a)(1) violation. We grant the petition for review and decline to enforce the Board's order.

A hearing was held before an Administrative Law Judge (ALJ) at which testimony was received from the employee; from

Thomas Leaveck, his union steward; from Ronald Hoffman, a co-worker; from Larry Hightower, the shift supervisor; and from James Smith, another shift supervisor. In his decision and proposed order the ALJ credited the testimony of Leaveck and Hightower and refused to credit the testimony of the employee where his testimony was in conflict with the testimony of Leaveck and Hightower. The General Counsel did not challenge these credibility determinations in the exceptions which were filed to the decision of the ALJ. Our recitation of the operative facts is therefore based on the ALJ's credibility determinations.

Spartan maintains a lunchroom for its employees which is equipped with vending machines. Problems had developed with the lunchroom situation because employees had been damaging the vending machines, littering the lunchroom, and failing to depart from the lunchroom promptly at the end of the break periods. In an attempt to alleviate these problems, supervisor Hightower had assigned foremen to monitor the lunchroom during breaks. On March 25, 1977, union steward Leaveck requested permission from Hightower to speak with employees in the lunchroom in order to exhort them to exercise care in using the vending machines and to keep the lunchroom clean. Hightower granted this request and also acquiesced in Leaveck's request for removal of the lunchroom monitors once Leaveck had spoken to the employees.

About 6:32 p. m., Leaveck went to the lunchroom and spoke to the employees for five to seven minutes. At that time, Daniell accused Leaveck of being "a company man now or something" and expressed his total lack of concern for the mess in the lunchroom and the vending machines. At 6:45 p. m., supervisor Smith announced the end of the break over the public address system. Two minutes passed without any employees leaving the lunchroom. Hightower then left his office and asked Smith to accompany him to the lunchroom. As they reached the lunchroom, several employees were leaving, but Hightower asked them to remain because he wished to speak with the workers. He then spoke to the assembled employees about maintaining the lunchroom and about departing punctually at the end of the break period. Before Hightower could complete his talk, Daniell, who was seated at the back of the lunchroom, crumpled his lunch bag and walked hurriedly past Hightower and out of the lunchroom and down the stairs. Hightower completed his talk, telling the employees that the foremen would be removed during the lunchroom breaks if the employees cooperated. Having finished the speech, Hightower and Smith left the lunchroom followed by the employees.

After Hightower descended the stairs he noticed Daniell standing in the hall some twenty to thirty feet away. Hightower then asked Daniell to come into the shipping office. When Daniell entered the shipping office Hightower asked him why he had left the lunchroom meeting before it was concluded. Hightower also told Daniell that nothing would happen to him as a result of the meeting, noting that Daniell's conduct in leaving the meeting did not show very much respect and that he simply wanted to know why Daniell had exited prematurely. Daniell responded by hollering at Hightower, shouting "I am going to get my steward," and bolting out of the office. Supervisor Smith entered the office just as Daniell was leaving. Hightower called to Daniell, "Lannie, I am not finished please remain in the room." Daniell ignored this request and continued walking away, prompting Smith to remark, "Lannie, Mr. Hightower asked you to please remain in the room." Daniell continued walking out of the office. Smith followed Daniell and again called to him to return, but Daniell disregarded this request as well.

After leaving the office, Daniell went to the shipping dock and located union steward Thomas Leaveck and together with Leaveck returned to the office. Daniell's actions in locating a union representative contravened established company policy. Spartan and the Union are parties to a collective bargaining agreement which provides for a grievance procedure. When an employee desires the assistance of a union

steward the established procedure is for the employee to request the supervisor to call a steward and for the supervisor to then summon the steward either by using the company's public address system or by personally finding the steward. The company's policy clearly provides that it is the responsibility of the supervisor, not the grieving employee, to summon the union steward. Lannie Daniell had for a time served as a union steward and was admittedly aware of this practice.

When Daniell and Leaveck arrived at the office, Hightower informed Daniell that he was suspended for his failure to obey the requests of two supervisors. Daniell was further instructed to return the following Monday when he would be informed about the disposition of his case. On Monday Daniell returned to the company and was notified by Robert Burgess, the Director of Distribution, that he was discharged. Burgess testified that after consulting with Hightower and reviewing Daniell's personnel record (which included warning notices and reflected incidents of prior insubordination) he decided to discharge Daniell.

The ALJ determined:

In her brief General Counsel argues that even accepting Hightower's version of the incident, "Daniell was clearly indicating his intention not to proceed in the interview without union representation and his statement served the same purpose as a literal request. Hightower's response was 'Lannie, I am not finished, please remain in the room,' indicating that he was not done talking to Daniell without his union representative present. Therefore, Hightower's testimony also shows a request for and denial of union representation." I find no merit to this argument. Daniell was aware of the established procedure for obtaining a union steward, namely, to request the supervisor to summon the steward and not for the grieving employee to get the steward himself. In this case, Daniell made no request for a steward. While under the principle enunciated in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43

L.Ed.2d 171 (1975), as interpreted in *Certified Grocers of California, Ltd.*, 227 NLRB No. 52 (1977), Daniell may have had the right to request that a union steward be called and to refuse to continue with the interview until the union steward arrived, he had no right to ignore the established practice whereby the union steward was summoned by a supervisor and not by the grieving employee and defiantly to walk out of the meeting even though he was asked to remain.

Based on the foregoing, the ALJ concluded that Daniell was discharged for his insolent and insubordinate behavior and not because he was exercising any right protected by the Act. The ALJ, therefore, recommended that the complaint be dismissed.

The Board, after accepting the factual situation recited by the ALJ, found that Daniell "reasonably believed that the meeting with Hightower could result in disciplinary action." It also found that "(h)is desire for union representation and his refusal to continue the meeting without it were made clear when Daniell left the meeting and told Hightower that he was going to get his steward." In these circumstances, the Board reasoned, Spartan's practice of calling in the union steward itself rather than having the employee do it was "irrelevant because neither Hightower nor Smith had summoned a steward, and they had given Daniell no indication they would do so before proceeding further with the meeting." The Board disagreed with the ALJ's finding that Daniell had been discharged for insubordination, and found that "Daniell was discharged for exercising his right to refuse to participate in an interview which he reasonably believed would result in disciplinary action without a union representative being present."

The Board ordered the company to offer the employee immediate and full reinstatement to his former job or an equivalent position, and to make him whole for his loss of earnings with interest. It also issued the customary, corresponding cease and desist order and required the posting of the usual notice.

The issues presented for review are: (a) whether an employee may have a reasonable fear of disciplinary action as a result of a meeting in which the possibility of disciplinary action is expressly disclaimed by the supervisor, and (2) whether, even if there is a reasonable fear of discipline, a violation of § 8(a)(1) can be found when an employee fails to make an express request for the presence of a union representative but rather spurns the orders of his supervisors and disregards company policy by locating a union representative by himself.

Spartan argues that Daniell could have had no reasonable apprehension of disciplinary action as a result of his interview with Hightower and therefore he possessed no right to union representation at that meeting. In the alternative, Spartan contends that even if Daniell possessed a reasonable belief that disciplinary measures would ensue from the meeting, he failed to invoke his Section 7 rights under *Weingarten* by requesting the presence of a union steward.

The starting point for resolution of this dispute is the Supreme Court's seminal decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *Weingarten* is the sole authority relied upon by the Board in reaching its decision; furthermore, it is the primary authority underpinning Spartan's position. In *Weingarten*, a divided Supreme Court held that Section 7 of the Act affords an employee the right to insist on the presence of a union representative at an investigatory interview with employer personnel which he reasonably believes will result in disciplinary action. The Court adopted the NLRB's position that § 7, which by its language guarantees the right to engage in concerted activity for mutual aid and/or protection, creates a right in an employee to refuse to submit to an investigatory interview without union representation, within these "contours and limits":

First, the right inheres in § 7's guarantee of the right of employees to act in concert for mutual aid and protection.

\* \* \* \* \* \*

Second, *the right arises only in situations where the employee requests representation.* In other words, the employee may forego his guaranteed right and, if he prefers, participate in an interview unaccompanied by his union representative. Third, the employee's right to request representation as a condition of participation in an interview is *limited to situations where the employee reasonably believes the investigation will result in disciplinary action.*

\* \* \* \* \* \*

Fourth, *exercise of the right may not interfere with legitimate employer prerogatives.*

\* \* \* \* \* \*

Fifth, the employer has no duty to bargain with any union representative who may be permitted to attend the investigatory interview. (Emphasis supplied.) 420 U.S. at 256, 95 S.Ct. at 963.

 *Weingarten* makes clear then that an employee is entitled to request and to receive union representation during an investigatory interview which he reasonably believes will result in disciplinary action. The Supreme Court's adoption of the "contour and limits" of that right makes equally clear that a union representative need not be present under any and all circumstances. In the instant case, the NLRB's interpretation of *Weingarten* attempts to expand several of the contours established by the Court. We do not subscribe to such a blanket application of *Weingarten.* Contrary to the Board, but in accord with the ALJ, we find that Daniell had no reasonable grounds to believe that the discussion with Hightower might result in his discipline.[1] In addi-

---

1. In *Universal Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, (1951) the Supreme Court held:

 We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed

tion, even assuming that Daniell did reasonably believe that he would be disciplined as a result of the meeting, *Weingarten* does not require a finding of a violation herein.

In the present case, Daniell had inexplicably walked out of the lunchroom when Hightower was addressing the employees. When Hightower called Daniell into his office to inquire into the matter, Hightower assured Daniell that he would not be disciplined in any manner as a result of the meeting. Hightower's inquiry of Daniell focused on the unexplained, hasty departure of Daniell from the lunchroom in the midst of an address by Hightower. Based upon "objective standards under all the circumstances of the case," *Weingarten*, 420 U.S. at 257, 95 S.Ct. at 964, it is clear that Daniell could not have reasonably believed that the meeting with Hightower might result in his discipline. The Board's conclusion with regard to the reasonableness of Daniell's belief is predicated upon Hightower's statement to him that he was disrespectful and question as to why he left the meeting. This represents precisely the type of "probe of an employee's subjective motivation" which was rejected by the Court in *Weingarten*. *Id.* A reasonable person in Daniell's position, having been employed at Spartan for more than eight years, having been exposed to the disciplinary procedures in the plant, and having been specifically told almost from the outset of the conversation with Hightower that he would not be disciplined as a result of the meeting, would not have reasonably feared that the conversation might result in his discipline. Concomitantly, Daniell's statement that he was going to get his steward does not reasonably imply possible disciplinary action. *See AAA Equipment Service Co. v. NLRB*, 598 F.2d 1142, 1146 (8th Cir. 1979).

*Weingarten* also stands for the proposition that the right of union representation ripens *only if* the employee involved in the investigation has made his own prior request for such representation. The Board discerns a "request" for union representation in Daniell's refusal to continue the meeting without it as evidenced by his departure to locate a steward. While we recognize that an employee's request may be manifested in a variety of words or actions, Daniell's actions in unilaterally seeking out his steward after leaving the office in direct violation of the orders of two supervisors cannot constitute the type of request contemplated by *Weingarten* in light of Daniell's knowledge of the established company procedure for procuring the presence of a union steward. *Weingarten* recognized that the right of union representation may not interfere with legitimate employer prerogatives. Spartan's policy of having the company locate the steward, so as to avoid possible disruption of the plant business by an employee searching the facility for a steward, classifies as a legitimate exercise of an employer prerogative. *See Roadway Express, Inc.*, 246 N.L.R.B. No. 189 (1979); *Chrysler Corporation, Hamtramck Assembly Plant*, 241 N.L.R.B. No. 169 (1979). *See also Climax Molybdenum Co. v. N. L. R. B.*, 584 F.2d 360, 363 (10th Cir. 1978).

Had Daniell possessed a reasonable fear of disciplinary action, then Hightower would have been bound to comply immediately with a request for a steward's attendance. Not only would a reasonable person in his position lack such a belief, but Daniell's action in bolting from the office precluded Hightower from either ascertaining whether Daniell wanted a steward present or from summoning a steward according to established company policy. Under these circumstances, Daniell acted at his own peril in blatantly disregarding both established company policy and the orders of his supervisors. He was not privileged to ignore the

the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial." *Id.* at 496–97, 71 S.Ct. at 469.

orders of Hightower and Smith to remain in the shipping office.

After a review of the entire record, we conclude that the Board's finding of a violation is not supported by substantial evidence. Indeed, to find a violation of the Act under the circumstances of this case would constitute an unwarranted expansion of the *Weingarten* doctrine beyond the "contours and limits" established by the Supreme Court. For the reasons stated above, the petition for review is granted and the cross-application for enforcement is denied.

KEITH, Circuit Judge, dissenting.

I respectfully disagree with the majority opinion because it fails to recognize that the factual situation presented before us is within the teaching of *NLRB v. Weingarten,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1974). In *Weingarten,* the Supreme Court approved the creation of a "§ 7 statutory right in an employee to refuse to submit, without union representation to an interview which he reasonably fears may result in his [the employee's] discipline." *Id.* at 256, 95 S.Ct. at 963. To trigger the protection afforded under *Weingarten* an employee must fear that disciplinary actions may be taken against him during an encounter with the employer. After recounting the facts in detail, the majority stated that the employee Lannie Daniell had no reasonable belief that his encounter with Shift Supervisor Hightower might result in disciplinary actions against Daniell. In support of this position, the majority points to the fact that Daniell had been a union steward and was aware of company policy requiring the employer to summon a union representative, if the employee requested it. In its eagerness to limit *Weingarten,* the majority totally ignores the dynamics of the encounter between Hightower and Daniell.

Employee Daniell left the second of two meetings in which Supervisor Hightower was speaking to the employees before the address was over. Shortly after the speech, Hightower saw Daniell and summoned him into Hightower's office. *Mr. Daniell did not refuse to enter Mr. Hightower's office, rather the employee complied with the employer's request.* Once inside the office, Supervisor Hightower began interrogating employee Daniell as to why he had left the meeting prematurely. Only after perceiving the tenor of the conversation did Daniell determine that it was in his best interest to have a union witness present. Apparently Daniell believed that the confrontation with the supervisor could result in his being disciplined. Subsequent events verified this initial perception.

Immediately upon returning with the union steward, Daniell received notice of his suspension from the job because he failed to remain in the room as requested by two supervisors. Spartan Stores further instructed Daniell that he could return on Monday to receive the final disposition of his case. On Monday Daniell learned of his discharge, allegedly for insubordination. The Board found that Spartan Stores had responded to Daniell's insistence on having union representation present by firing him. This discharge violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The basis for this conclusion was a finding that Daniell's *conduct* was a request to have union representation present. I think that there is substantial evidence to support this finding.

The majority opinion reasons that Daniell's hasty departure "precluded Hightower from either ascertaining whether Daniell wanted a steward present or from summoning a steward according to established company policy." This position is untenable. Nothing prevented Supervisor Hightower from having the union representative paged. Furthermore, Daniell announced that he was leaving to find the union representative; obviously, Hightower knew of the employee's desire to have the union representative present. Yet the majority would have had Daniell remain in an office with two management personnel to request that they call the union representative.

In support of this tight rope approach, the majority looks to *NLRB v. Weingarten,*

*supra.* *Weingarten* establishes the right of union representation whenever the employee is involved in an interview that the employee reasonably believes may result in his being subjected to company discipline. Daniell was being forced to explain or defend his conduct to Hightower. The encounter between the two men occurred on the heels of a fairly volatile event. It exalts form over substance to conclude that Daniell failed to make a request following his announcement that he was going to find the union steward. Had Daniell made a request for union representation, refused to answer any questions until the steward arrived and then been discharged for insubordination, I presume the majority would find the facts falling within the "contours and limits" of *Weingarten.* Such a limited and technical application of *Weingarten's* principles is unwarranted. Neither *Weingarten* nor the majority would require a written request before triggering the protections of § 7. Yet the majority blindly refuses to acknowledge that this conduct constituted a request for union representation in a meeting between employer and employee. This literal approach violates the spirit of *Weingarten* because it ignores the principal concerns of that decision.

Speaking for the Court, Justice Brennan noted:

The action of an employee in seeking to have the assistance of his union representative at a *confrontation* with his employer clearly falls within the literal wording of § 7 that "[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of mutual aid or protection." This is true even though the employee alone may have an immediate stake in the outcome; he seeks "aid or protection" against a *perceived threat* to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not *initiate* or continue a practice of *imposing punishment unjustly.* *Weingar-*

*ten* at 259–60, 95 S.Ct. at 965 (emphasis supplied).

The triggering catalyst for *Weingarten* protections is the *confrontational* aspect of a meeting between employers and employees. Daniell obediently complied with Supervisor Hightower's initial request. Only after the employee was being asked to defend or explain his conduct did the employee demand (by conduct) a union representative for the duration of the interview. *Weingarten* permits the waiver by conduct of this right to have union representation present. In other words, "the employee may forego his guaranteed right and, if he prefers, participate in an interview unaccompanied by his union representative." *Id.* at 257, 95 S.Ct. at 963. Daniell chose not to participate in an interview without witnesses. He did not waive this right. The rationale for the guaranteed right is as follows:

A *single* employee *confronted* by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors . . . .

. . . A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview.

*Id.* at 262–63, 95 S.Ct. at 966 (emphasis added).

In our case Daniell announced his intention of securing union assistance before continuing the interview with company personnel, Hightower and Smith. Daniell obviously feared repercussions. Accompanied by the union steward, Daniell returned immediately to the supervisor's office only to discover that he had been suspended. A few days later he was discharged. Based on the above, it is evident that there was substantial evidence supporting enforcement of the Board's order. Because the majority unnecessarily restricts the "con-

tours and limits" of *Weingarten*, I respect-
fully dissent.