**LENNOX INDUSTRIES, INC.,**
**Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
**Cross-Petitioner.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LENNOX INDUSTRIES, INC.,**
**Respondent.**

Nos. 79–3890, 79–3894.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 17, 1981.

Rehearing and Rehearing En Banc
Denied March 19, 1981.

Thompson & Knight, Bennett W. Cervin, Stephen F. Fink, Dallas, Tex., for petitioner, cross-respondent, Lennox Industries, Inc., in No. 79–3890.

Elliott Moore, Deputy Associate Gen. Counsel, William A. Lubbers, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, John E. Higgins, Deputy Gen. Counsel, David A. Fleischer, Atty., N. L. R. B., Washington, D. C., for the N. L. R. B.

Stephen F. Fink, Dallas, Tex., for respondent in No. 79–3894.

W. Edwin Youngblood, Fort Worth, Tex., for other interested parties.

Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judge.

GOLDBERG, Circuit Judge:

Over two centuries ago, James Otis decried a political system which dared to impose taxation without representation. Nearly a decade ago, the Supreme Court played an encore to the blare of Gideon's trumpet[1] and held that there could be no incarceration without representation.[2] About six years ago, the Court applied this concept to the labor relations arena, and ruled that an investigatory confrontation without representation was an unfair labor practice.[3] Today we must determine the parameters of an *investigatory* confrontation in order to decide whether union representation was required at a meeting between an employee and his superior when no discipline was intended by the employer.

Petitioner Lennox Industries, Inc. ("Petitioner" or "Lennox") operates a heater and air conditioner manufacturing plant in Fort Worth, Texas. The United Steelworkers of America, AFL–CIO, Local 4629, represents petitioner's employees. In early 1978, Paul Nestle, a member of the union, was employed at Lennox's Fort Worth plant as an assembly line worker under the supervision of Leo Ary. Fred Boenker, manager of final assembly, was Ary's superior.

Nestle had experienced some difficulty with his assembly line duties and had been criticized by Ary for his slow work. On February, 16, 1978, Ary approached Nestle on the work floor and stated that he would like to talk to Nestle at his (Ary's) desk. Nestle asked that a union representative be present at the meeting, but Ary responded that one would not be necessary. Nestle repeated his request, but nevertheless proceeded toward Ary's desk. As the two men

walked, heated words were exchanged and Ary interpreted one of Nestle's remarks as a threat.[4] Ary then asked Nestle to accompany him to Boenker's office and Nestle agreed.

Ary began the meeting with Boenker by complaining that Nestle had threatened him, but Nestle denied this. Boenker asked if there had been any witnesses to the altercation and was told that there were none. Boenker then changed the subject by turning to the issue of production and stating that he had wanted to talk to Nestle and Ary even before their argument. At this point Boenker's telephone rang and as Boenker spoke on the telephone, Nestle and Ary expressed their contempt for each other. Boenker completed his phone call and told Nestle and Ary that while he was aware of their personal differences, he would like to see them get along. Boenker again changed the subject to productivity and discussed the deficiencies of some employees, including Nestle.[5] Nestle attempted to defend himself and asked for a union committeeman to represent him. Boenker replied that if he thought that Nestle needed a committeeman, one would be provided. Boenker then stated that Nestle would have to continue to work under Ary's supervision, and that he did not want any disharmony between supervisors and assembly line workers. He added that Nestle's production would have to improve, but assured Nestle that no threat was intended. The meeting then ended, and both Ary and Nestle left Boenker's office.

In light of the fact that Nestle had requested a union representative and was refused, the National Labor Relations Board found that Lennox had violated Section 8(a)(1) of the National Labor Relations

1. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 790 (1963).

2. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

3. *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975).

4. Nestle claimed that he said "Hey, isn't there some way we can work this out?" NLRB Tran-

script at 27. Boenker testified that Ary recalled Nestle's words as "Let's leave the premises and get things straight between us." NLRB Transcript at 190.

5. Boenker said that he had been observing Nestle and a co-employee, and that he believed that they were instigating a production slow-down.

Act.[6] The Board ordered Lennox to cease and desist from this unfair labor practice and from any practice which would interfere with an employee's exercise of his right of concerted activity, as guaranteed by Section 7 of the Act. Lennox has petitioned this court for review of the Board's decision, and the Board has cross-applied for enforcement of its order.

On appeal, Petitioner Lennox argues that the Board erred in finding a violation of Nestle's right to a union representative at an investigatory meeting. Petitioner notes that the Administrative Law Judge found that discipline was never intended to result from the meeting, and that no discipline in fact resulted. Petitioner reasons that in light of these findings, the meeting was not investigatory, the employee did not reasonably fear discipline, and no union representative was therefore required.

In the landmark case of *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court held that Section 7 of the National Labor Relations Act "guarantees an employee's right to the presence of a union representative at an investigatory interview in which the risk of discipline reasonably inheres." 95 S.Ct. at 965–67. The Court noted that such a rule provides benefits for both employee and employer: it insures adequate representation for an employee who may be too fearful or inarticulate to adequately present his case, and it enables the employer to save time and effort by getting to the

bottom of an incident more quickly. Moreover, "[r]equiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality [of employer/employee bargaining power] the Act was designed to eliminate, and bars recourse to the safeguards the Act provided 'to redress the perceived imbalance of economic power between labor and management.'" *Id.* at 966 (citations omitted).

■ Under *Weingarten*, an employee is entitled to a union representative only when (1) the interview in question is *investigatory*, i. e., when it is designed to elicit answers to work-related questions which might affect the employee or the bargaining unit, and (2) the employee reasonably fears that discipline might result from the interview. Thus where the purpose of a meeting is *disciplinary* rather than *investigatory*, i. e., where the meeting is designed simply to inform an employee of a previously made decision to impose discipline, no union representative is required since there is no attempt to elicit facts which might result in discipline.[7] *See NLRB v. Certified Grocers of California, Ltd.*, 587 F.2d 449 (9th Cir. 1978); *Texaco, Inc.*, 247 N.L.R.B. No. 56 (Jan. 30, 1980); *Roadway Express, Inc.*, 246 N.L.R.B. No. 180 (Dec. 14, 1979); *Baton Rouge Water Works Co.*, 246 N.L.R.B. No. 161 (Dec. 14, 1979). Similarly, where the purpose of a meeting is *supervisory* rather than *investigatory*, e. g., where

---

6. Section 8 of the Act, 29 U.S.C.A. § 158 (West 1973), provides, in pertinent part:

   (a) It shall be an unfair labor practice for an employer—

   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 of this title ...

   "Section 157 of this title," Section 7 of the Act, protects concerted activity by employees, including one employee's request for the presence of a union representative at an investigatory interview which the employee reasonably believes might result in discipline. *J. Weingarten, Inc., supra*, 95 S.Ct. at 965–67; *Anchortank, Inc. v. NLRB*, 618 F.2d 1153, 1157–58 (5th Cir. 1980). The Board's finding in the case at bar was based upon this doctrine.

7. The rationale behind this rule was simply stated by this Court in *Anchortank v. NLRB, supra* :

   Since the disciplinary decision has already been made, the union representative cannot safeguard the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. Similarly, because there is no factfinding at such an interview, the union representative cannot aid the employer and employee by furthering the former's investigation of the incident at issue.

   *Id.* at 1168 (citations omitted); *see Mt. Vernon Tanker Co. v. NLRB*, 549 F.2d 571, 575 (9th Cir. 1977) (interview not investigatory, since "[t]he result from the outset is a foregone conclusion").

the meeting is designed simply to show an employee how to improve his work performance, no right to a union representative inheres. *See AAA Equipment Service Co. v. NLRB*, 598 F.2d 1142 (8th Cir. 1979); *Alfred M. Lewis, Inc. v. NLRB*, 587 F.2d 403 (9th Cir. 1978). In the case at bar we must thus decide whether the interview in question was an investigation which Nestle reasonably feared might result in discipline, thereby requiring the presence of a union representative upon request.

■ Employee Nestle was asked questions concerning both his poor work performance and his less than friendly altercation with his supervisor. Such questioning is investigatory in that it is designed to elicit responses which might well result in discipline against the employee. Moreover, even if the employer had previously decided that discipline would definitely not result from the interview in question, information could be elicited at that interview which might enable the employer to build a case against the employee, culminating in discipline at some later date. Hence an interview like the one in the case at bar where the employee is asked questions about poor work or an altercation with a superior is by its very nature "an investigatory interview in which the risk of discipline reasonably inheres." *See J. Weingarten, Inc., supra*, 95 S.Ct. at 966.

■ Insofar as it is inconsistent with this analysis, we reject the language in Eighth and Ninth Circuit opinions which suggests that it is only when disciplinary action is "probable" or "seriously considered" that the right of representation arises. *See, e. g., AAA Equipment Service Co., supra*, 598 F.2d at 1146; *Alfred M. Lewis, Inc., supra*, 587 F.2d at 410. Such language is plainly inconsistent with the dictates and rationale of the Supreme Court in *Weingarten*. An interview may well be "investigatory" and may well reasonably include the "risk of discipline" even though the employer is not seriously contemplating discipline at the time the interview is conducted. Indeed, a purpose of the interview may be to decide whether discipline against an employee is an option to be seriously considered. Furthermore, an interview in which work-related questions are asked of an employee, but which the employer does not intend to result in discipline may nevertheless result in discipline if the employee surprises his employer with an answer which the employer finds unsatisfactory or threatening. The *Weingarten* rule is designed to protect such "fearful" or "inarticulate" employees from the inadvertent results of their answers during work-related interviews. *See, J. Weingarten, Inc., supra*, 95 S.Ct. at 966–67. For the *Weingarten* rationale to be effectively achieved, courts must not narrow the scope of the doctrine as enunciated by the Supreme Court: it is whenever the risk of discipline reasonably inheres in an investigatory interview that a union representative is required, and not merely when disciplinary action is "probable" or "seriously considered." *See id.* at 965–67. *But see AAA Equipment Service Co., supra*, 598 F.2d at 1146; *Alfred M. Lewis, Inc., supra*, 587 F.2d at 410. We break no new ground, but merely restate the words of *Weingarten* in holding that where an interview is designed to elicit information which might reasonably result in discipline—either immediately or at some time in the future—a union representative is required if the employee so requests. Because the risk of discipline is inherent in interviews focusing upon poor work or upon an employee/supervisor confrontation, we agree with the Board and find that a union representative was required in the case at bar.[8]

8. Petitioner's argument that there was not sufficient evidence to support the Board's finding that Nestle reasonably feared discipline as a result of the meetings is without merit. As noted above, it is certainly reasonable for an employee to fear the risk of discipline as a result of a meeting focusing on poor work or on an altercation with his superior. Moreover, assurances that a union representative will be provided if a company official thinks one is necessary are insufficient to allay those reasonable fears. Columbus Foundries, Inc., 229 N.L.R.B. 34 (April 18, 1977), *aff'd*, 84 Lab. Cas. ¶ 10,645 (5th Cir. January 27, 1978); Van Tran Electric Corp., 218 N.L.R.B. 43 (May 29, 1975). The Board's finding that Nestle reasonably

Petitioner also argues that Nestle did not properly request the presence of a union representative at the meetings in question and that therefore no representative was required. Petitioner points out that the purpose of the original meeting between Nestle and Ary was unknown, and that the subsequent meeting in Boenker's office was a result of the altercation between Nestle and Ary. Because the second meeting involved a different company official and presumably a different subject, petitioner argues that the employee's request for a representative at the first meeting was not sufficient to require a representative at the second.

It is clear than "an employee may make a request for union representation while on the plant floor, and need not repeat the request at the office if the official there is aware of such request...." *Roadway Express, Inc., supra.* Petitioner is correct in pointing out that Boenker, the official in whose office the second meeting was held, was unaware of Nestle's original request for a union representative. However, supervisor Ary was present at the second meeting as well as the first, and he was well aware of Nestle's request. Thus Nestle need not have repeated his request in Boenker's office. Moreover, the Administrative Law Judge correctly characterized the two meetings as a "single, interrelated episode," enabling a single request for a union representative to suffice for both meetings. The fact that the scope of the second meeting included the Nestle-Ary confrontation as well as Nestle's poor work is unimportant. Nestle presumably believed that the first meeting would focus on his work performance, and the second meeting dealt with this topic as well. Ary knew that Nestle desired and requested a union representative at the first meeting, and he certainly should have known that a representative was desired at the second. Indeed, once the scope of the second meeting was expanded to include the Nestle-Ary confrontation, there was even more reason for Nestle to want a union representative, since the risk of discipline was increased. It was therefore unnecessary for Nestle to repeat his S.O.S. in distress at the meeting in Boenker's office.

The rationale of *Weingarten* does not require an employee to repeat his request for union representation each time the subject changes during a meeting with company officials. Such a rule would be both burdensome for the employee and tedious for the company officials. As long as one or more company officials are aware of the employee's desire and request for the presence of a union representative, a single request will suffice for the multiple subjects of a single meeting, or for multiple meetings which are part of a "single, interrelated episode," as here. The union representative's admission ticket gained by the employee's original request entitles the employee to representation during both ends of the doubleheader.

The facts of this case fit neatly within the parameters of the rule that in the labor arena there must be no investigatory confrontation without representation. The meetings here were clearly investigatory, and substantial evidence supported the Board's finding that the employee reasonably feared the risk of discipline. Moreover, the employee's request for a union representative was sufficient to require a representative's presence at both meetings, since one company official was present at both meetings and was aware of the request, and since the two meetings were part of a "single, interrelated episode." The Board's order is therefore

ENFORCED.

---

feared discipline is supported by substantial evidence on the record as a whole and must therefore be left undisturbed. *See Universal*

*Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951).