**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 81–7754.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1982.

Decided Oct. 5, 1982.

---

Howard E. Perlstein, Washington, D. C., for petitioner.

John H. Arbuckle, San Bruno, Cal., for respondent.

Before SNEED, FARRIS and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

## OVERVIEW

The National Labor Relations Board is applying for enforcement of its Decision and Order against the United States Postal Service. An Administrative Law Judge had concluded that the Postal Service violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), on several separate occasions involving Supervisor James Siller at the Oakland, California, Post Office. The Board reversed the ALJ, found violations of Section 8(a)(1), and ordered appropriate relief. *United States Postal Service*, 256 N.L.R.B. 78 (1981).[1] We grant enforcement of the Board's order in part and deny enforcement in part.

## ANALYSIS

### I. WEINGARTEN RIGHTS

James Durkin was a letter carrier at the Temescal Station in the West Grand Carrier

---

1. The Board sustained the ALJ's finding that the Postal Service had not violated Section 8(a)(1) in a separate complaint involving employee Eileen Williams. *See* 256 N.L.R.B. at 78 (complaint # 1). That complaint was dismissed.

Annex branch of the Oakland, California, U. S. Post Office. He was a member of the National Association of Letter Carriers, Local 76, the union which represented the Annex's letter carriers. On December 8, 1978, Durkin did not finish his route and clock out until forty-two minutes after his shift was scheduled to end. Contrary to established Postal Service policy, Durkin had not secured authorization from his superior before working overtime, nor had he telephoned his supervisor to let him know that he would not be able to complete his route on time. As Durkin was leaving, his supervisor, James Siller, asked Durkin why he had violated the overtime rule. Durkin responded that he was off duty and did not have to answer. Siller told Durkin they would discuss the matter in the morning.

As soon as Durkin arrived at work the next morning, Siller asked Durkin to accompany him to the general foreman's office. Durkin asked whether he needed his union representative. Siller answered, "No, you don't. This is just a discussion." Durkin responded, "Okay," and proceeded to enter the office. He made no further request for the presence of a union representative. When they were in the office, Siller again asked Durkin for an explanation for being late the previous day and for not seeking approval before working overtime. Durkin was evasive, asked Siller what he meant, and said he had already explained. Durkin also said the discussion was ridiculous, he did not want to talk about it, and did not want to listen to anything Siller had to say. Durkin called Siller a "sucker" and walked out of the office. Because of his conduct during the discussion, Durkin was suspended for seven days, on four of which he lost pay. The suspension letter stated:

> On Saturday morning, December 9, 1978, we went into the Manager's office to discuss this irregularity. When I attempted to discuss with you this irregularity, you became boisterous, stating, "We have talked about this already. I don't want to hear anything you have to say or talk to you." You then called me a "sucker" and walked out of the office.

> In addition to your insubordination on December 9, 1978, the following element of your past record was considered:
>
> Letter of warning for insubordination on November 1, 1978.

The Board's General Counsel argued before the ALJ that the Postal Service had suspended Durkin for exercising his *Weingarten* right to have a union representative present at the meeting, a violation of Section 8(a)(1). In *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court established the right of an employee to request and have the presence of a union representative during an interview with his employer if the employee reasonably believed that he might be disciplined. *Id.* at 256–60, 95 S.Ct. at 963–65.

The ALJ rejected the argument that *Weingarten* applied. The ALJ based his conclusion on two grounds. First, the ALJ concluded that Article XVI of the national collective bargaining agreement between the Postal Service and the union waived the employees' *Weingarten* right. Article XVI provides, in relevant part:

> For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of a prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

Second, the ALJ concluded that because Durkin was aware of the non-disciplinary

nature of the "discussion," as defined by Article XVI, he did not have the requisite reasonable fear of being disciplined. The ALJ concluded that Durkin was suspended for insubordination during the meeting and not for violating the Postal Service's overtime policy the previous day nor for insisting on his right to have a union representative present.

The Board rejected the ALJ's findings and recommendation. Instead, the Board concluded that 1) even assuming that waiver of an employee's *Weingarten* rights was possible, the collective bargaining agreement did not contain a sufficiently clear and unambiguous waiver; 2) Durkin requested the presence of a steward at the meeting; 3) Durkin did not waive the request; 4) Durkin had a reasonable fear of being disciplined; 5) Durkin was suspended for exercising his *Weingarten* rights; and 6) Durkin's conduct was an excusable product of the unlawful interview. Accordingly, the Board found a violation of Sections 7 and 8(a)(1) and ordered the Postal Service to make Durkin whole for his lost wages and to expunge his personnel record of the incident.

■ We have reviewed the record and although we hesitate to set aside a decision by the Board, we do so here because we do not find "substantial evidence on the record considered as a whole," 29 U.S.C. § 160(e)–(f); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), to support the Board's finding that Durkin feared discipline. Instead, we adopt the findings of the ALJ.[2] *See United States Postal Service,* 256 N.L.R.B. at 80–81, 85–86. We decline to enforce the Board's order. We need not reach the other issues. We specifically decline to decide whether the collective bargaining agreement can or did waive the employees' *Weingarten* rights. Neither the Board nor the Supreme Court has ruled on whether an

employer and a union can negotiate an agreement that waives the employees' *Weingarten* rights. *See Weingarten,* 420 U.S. at 275 n.8, 95 S.Ct. at 971 n.8 (Powell dissenting); *United States Postal Service,* 256 N.L.R.B. at 81 n.12. *But see Prudential Insurance Co. v. NLRB,* 661 F.2d 398, 400–01 (5th Cir. 1981) (waiver of *Weingarten* rights by collective bargaining agreement valid). We find only that Article XVI of the collective bargaining agreement must be taken into consideration in determining whether an employee had a reasonable expectation of being disciplined during a "discussion."

■ The discussion clause states that informal, private discussions are not disciplinary, not grievable, cannot be recorded in the employee's personnel folder, cannot be cited as an element of prior adverse record, and can be relied on to show only that the employee was made aware of his obligations and responsibilities. The ALJ found that Durkin was aware of the discussion clause in the agreement. The Board did not reject this finding and we accept it as supported by substantial evidence.

In *Alfred M. Lewis, Inc. v. NLRB,* 587 F.2d 403, 410 (9th Cir. 1978), we stated:

It should be acknowledged that a supervisory interview in which the employee is questioned or instructed about work performance inevitably carries with it the threat that if the employee cannot or will not comply with the directive, discharge or discipline may follow; but that latent threat, without more, does not invoke the right to the assistance of a union representative. The right of representation arises when a significant purpose of the interview is to obtain facts to support disciplinary action that is probable or that is being seriously considered.

*Accord AAA Equipment Service Co. v. NLRB,* 598 F.2d 1142, 1146 (8th Cir. 1979).

---

**2.** We review the Board's findings under the substantial evidence standard, even where, as here, the Board rejects the ALJ's findings. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951). But the ALJ's credibility findings are given

more weight and the Board's inconsistent findings receive closer scrutiny in such circumstances. *Kallmann v. NLRB,* 640 F.2d 1094, 1098 & n. 7 (9th Cir. 1981); *Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074, 1076–80 (9th Cir. 1977).

*Contra Lennox Industries, Inc. v. NLRB,* 637 F.2d 340, 344 (5th Cir.), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3113, 69 L.Ed.2d 974 (1981). Here, Siller testified that the purpose of the interview was not to discipline Durkin. Siller specifically told Durkin he did not need a representative because this was only a discussion. In a very similar case, the Sixth Circuit held that an employee did not have an objectively reasonable fear of being disciplined when the employee was familiar with the company's disciplinary procedures and was specifically told at the beginning of a discussion with his supervisor that he would not be disciplined. *Spartan Stores, Inc. v. NLRB,* 628 F.2d 953, 957–58 (6th Cir. 1980). The Sixth Circuit overruled the Board and held that the employee was properly discharged for disregarding company policy and his supervisors' orders by walking out on a meeting with them. *Id. See also AAA Equipment Service,* 598 F.2d at 1145–46 (an employee was properly discharged for refusing to listen to what his supervisor had to say during a "run-of-the-mill conversation" and for disobeying the supervisor's order not to walk away; the employee had no reasonable fear of being disciplined). Similarly, in this situation, Durkin could not reasonably fear that he would be disciplined. The terms of the collective bargaining agreement modified the Postal Service's disciplinary procedures and Siller reaffirmed this when he assured Durkin that a union representative was not necessary because it was only a discussion.

Further, even if the Postal Service had violated Durkin's *Weingarten* rights, Durkin would not necessarily be immune from appropriate discipline. *E.g., NLRB v. Illinois Bell Telephone Co.,* 674 F.2d 618, 623 (7th Cir. 1982); *Montgomery Ward & Co. v. NLRB,* 664 F.2d 1095, 1097 (8th Cir. 1981). Section 10(c) of the Act, 29 U.S.C. § 160(c), provides, in relevant part, "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause." Durkin's suspension was for cause. There is no causal connection between Siller's attempt to talk with Durkin and Durkin's insubordinate reaction. The only provocation here emanated from Durkin, not from Siller. While Durkin's suspension was based, in part, on his walking out of the meeting, we do not interpret this as support for the Board's conclusion that Durkin was suspended for refusing to continue the discussion without the presence of a union representative. *See also Spartan Stores, Inc. v. NLRB,* 628 F.2d 953, 957–58 (6th Cir. 1980); *AAA Equipment Service,* 598 F.2d at 1145–46.

## II. OTHER INCIDENTS

The General Counsel also argued that the Postal Service violated Section 8(a)(1) when Siller allegedly denied two employees, Eileen Williams and James Durkin, access to their shop steward, and when Siller allegedly threatened to discipline an employee, Gary Neroda, for filing a grievance. The ALJ did not find substantial evidence to support these charges and recommended dismissal. The Board disagreed and found two violations of Section 8(a)(1).

The findings of the ALJ and the Board are described more fully in the Board's opinion and need not be repeated here. *See United States Postal Service,* 256 N.L.R.B. at 78–80, 83–85. We order enforcement of the Board's order involving these two incidents. There is substantial evidence on the record considered as a whole to support the Board's conclusion that the Postal Service violated Section 8(a)(1).

ENFORCEMENT OF THE BOARD'S ORDER IS GRANTED IN PART AND DENIED IN PART.