**INTERNAL REVENUE SERVICE, WASHINGTON, D. C., and Internal Revenue Service, Hartford District Office, Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

No. 80–2423.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1981.

Decided Feb. 12, 1982.

Margaret E. Clark, Atty., Dept. of Justice, Washington, D. C., with whom Thomas S. Martin, Acting Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief for petitioners.

Mary Elizabeth Medaglia, Associate Sol., Federal Labor Relations Authority, Washington, D. C., for respondent.

William F. White, Robert M. Tobias and John F. Bufe, Washington, D. C., were on the brief for intervenor.

Before J. EDWARD LUMBARD,\* Senior Circuit Judge, and ROBB and MIKVA, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge LUMBARD.

LUMBARD, Senior Circuit Judge:

On March 16, 1979, Robert Daley, a Revenue Officer in the Internal Revenue Service (IRS) Hartford, Conn. district office, was examined under oath by two IRS Internal Security Division Inspectors in connection with the leak of confidential information about a taxpayer whose delinquent personal income tax files Daley was processing. Daley's request that he be allowed to bring a union representative with him to the interview was rebuffed with the comment that it was to be a "third-party interview" and that Daley was not the subject of the investigation. Thereafter, Daley's union, the National Treasury and Employees Union, filed a complaint with the Federal Labor Relations Authority (FLRA), alleging that the IRS committed an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) & (8) by its failure to comply with 5 U.S.C.

§ 7114(a)(2)(B), which entitles a union to have a representative at investigatory interviews where the employee "reasonably believes that the examination may result in disciplinary action against [him]. . . ." On September 26, 1980, the FLRA adopted the findings of fact and conclusions of law of the administrative law judge who held that whether an employee "reasonably believes" he faces discipline is to be determined solely by reference to the surrounding facts and circumstances and without regard to whether the employee actually fears that he might be subject to discipline, and he concluded that the circumstances of Daley's interview satisfied this test. The FLRA ordered the IRS to cease and desist from such unfair labor practices and this petition for review followed. We deny the petition for review and grant the FLRA's cross application for enforcement.

The taxpayer whose delinquent account Daley was processing was the part-owner of a drinking establishment frequented by a certain IRS Regional Auditor. On February 20, 1979, the taxpayer called Daley to complain that this Auditor—with whom the taxpayer had never discussed his tax problems—had been in the bar a week earlier, and had told the bartender that the owner was in trouble with the IRS and that the IRS might close the place down. The taxpayer told Daley he did not know how the Auditor had learned of his tax problems and that he wanted to get in touch with the Auditor to straighten out the problem. Daley told the taxpayer that he was going to notify his superiors about the complaint.

Daley promptly informed his superior, Charles McQueeney, about the call. McQueeney forwarded the complaint through official channels and an investigation was begun by the Internal Security Division, IRS Inspection Service. The purpose of that investigation was to learn whether the Internal Auditor had disclosed confidential information about the taxpayer, and if so, how the Auditor had learned of that information.

---

\* Of the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

On March 15, 1979, McQueeney told Daley that Inspectors from the IRS Inspection Service were going to interview Daley the following day. Although McQueeney did not tell Daley the purpose of the interview, Daley assumed that it was related to the taxpayer's complaint. Daley, a former union officer, then contacted an attorney for the union, Peter Conroy, for advice about whether he should bring an attorney with him to the interview. Conroy advised Daley that he was entitled to representation and that whether he should bring a lawyer was a question of Daley's own preference. Daley, who knew that the Inspectors investigated all charges of misconduct concerning IRS employees and that their investigations could lead to disciplinary sanctions, responded that he wanted Conroy to accompany him to the interview the following day. Daley then informed McQueeney that he wished to bring Conroy with him to the interview. McQueeney did not immediately respond, but later that day told Daley that he could not have an attorney present during the interview because it was a "third-party interview," and Daley was not the subject of the investigation.

The next day, March 16, Daley reported to the interview with Conroy in tow. Daley explained to the two Inspectors who Conroy was and stated that he wished to have Conroy present during the interview. The Inspectors told Daley that he could not have a union representative present because it was a third-party interview and Daley was not the subject of the investigation. Conroy objected to his exclusion but instructed Daley to go into the interview room without him. Once inside, the Inspectors again explained that the reason Daley could not bring Conroy with him was that the subject of the interview was a party other than Daley.

After putting Daley under oath, the Inspectors questioned Daley concerning the complaint of unauthorized disclosure of federal tax information that Daley had previously reported to McQueeney. The Inspectors asked Daley to repeat the details of his conversation with the complaining taxpayer. They then asked Daley if he knew the subject of the investigation, the Auditor about whom the taxpayer had complained. The Inspectors wanted to know if Daley had ever seen the Auditor in Daley's office or work area, and whether it was possible that someone could have learned about the taxpayer's affairs by observing papers laying on Daley's desk. Daley denied leaving such papers about and noted also that he only had charge of the taxpayer's personal tax records—another Revenue Agent had charge of the taxpayer's business records. The interview ended after about a half hour and the Inspectors thanked Daley for his cooperation. At the hearing before the administrative law judge, Daley recalled that the interview "was very cordial." Daley had no further involvement in the matter under investigation.

Thereafter, the union filed an unfair labor practice charge with the FLRA, claiming that the IRS's denial of Daley's request for union representation at the March 16 interview violated 5 U.S.C. § 7116(a)(1) & (8). On November 8, 1979, the FLRA General Counsel issued a complaint charging that the IRS had committed an unfair labor practice in violation of § 7116(a)(1) & (8) by refusing to allow Daley, at his request, to bring a union representative to an investigatory interview, as required by 5 U.S.C. § 7114(a)(2)(B). That section provides, in pertinent part:

> An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at . . . any examination of an employee in the unit by a representative of the agency in connection with an investigation if (i) the employee reasonably believes the examination may result in disciplinary action against the employee; and (ii) the employee requests representation.

At a hearing on the complaint, the IRS tried to introduce evidence that Daley did not actually fear that he might be disciplined as the result of the interview. Specifically, the IRS proffered an affidavit given by Daley in the course of the investigation of the unfair labor practice charge and

tried to cross-examine Daley regarding his state of mind at the time he requested union representation. The administrative law judge ruled that Daley's subjective state of mind was irrelevant and refused to admit the evidence.

In his decision and order of March 11, 1981, the administrative law judge held that whether an employee "reasonably believes" that the interview may result in disciplinary action against him should be determined by whether the investigatory interview was one "in which the risk of discipline reasonably inheres." The test, he said, is whether in light of the "external evidence . . . a reasonable person [ ] would conclude that disciplinary action might result from the interview." He rejected the IRS's contention that the statute requires a threshold determination that the employee actually fears discipline, relying on *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). On the facts, the administrative law judge found that Daley's interview was one in which the risk of discipline inhered. The FLRA subsequently adopted the decision of the administrative law judge. 4 FLRA No. 37 (1980).

■ Our review of the FLRA's interpretation of § 7114(a)(2)(B) is limited to determining whether there is a rational basis for that interpretation. *See National Federation of Federal Employees v. F.L.R.A.*, 652 F.2d 191, 193 (D.C.Cir. 1981). As we cannot say that the FLRA's interpretation is unreasonable, we affirm.

■ In *Weingarten*, the Supreme Court held that the right to "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection," National Labor Relations Act, § 7, 29 U.S.C. § 157, guarantees to employees the right to union representation at any interview where "the employee reasonably believes the investigation will result in disciplinary action." *Weingarten, supra*, 420 U.S. at 257, 95 S.Ct. at 963. The Court said in dicta that reasonable grounds for requesting representation were to be measured objectively, emphasizing that it would " 'reject any rule that requires a probe of

an employee's subjective motivations as involving an endless and unreliable inquiry.' " 420 U.S. at 257 n. 5, 95 S.Ct. at 964 n. 5. Both parties agree that § 7114(a)(2)(B) extends to federal employees the same rights that *Weingarten* secured to employees in the private sector. Therefore, the FLRA properly looked to *Weingarten's* footnote 5 in construing the language of that section to bar any inquiry into Daley's subjective motivations at the time he requested representation at the investigative interview. *See also Lennox Industries, Inc. v. N.L.R.B.*, 637 F.2d 340, 344 (5th Cir. 1981) ("it is whenever the risk of discipline reasonably inheres in an investigatory interview that a union representative is required, and not merely when disciplinary action is 'probable' or 'seriously considered' ").

■ The question remains whether there is substantial evidence in the record, *see* 5 U.S.C. § 7123(c) (Supp. III 1979), to support the FLRA's finding that the risk of discipline inhered in the interview, under oath, of Daley by the two Inspectors from the IRS Inspection Service. Here, a taxpayer whose delinquent federal tax files were in Daley's care had complained that an IRS Auditor had publicly disclosed confidential information about his tax problems and proposed IRS action against his business. Such disclosure to the taxpayer constituted a serious violation of IRS regulations and could lead to disciplinary action. Even though the Auditor and not Daley was stated to be the subject of the investigation, Daley's custody of the taxpayer's personal income tax files would have subjected him to disciplinary action if he were found to have improperly or negligently cared for those files. Furthermore, Daley could not be assured that he would not be subject to discipline as the result of the interview. In this context, the statements of the inspectors that Daley was not the subject of the interview, and that the interview was aimed at another party, could not eliminate the risk that Daley might be placed in jeopardy as a consequence of something he said to them. *Cf. Spartan Stores, Inc. v. N.L.R.B.*, 628 F.2d 953 (6th Cir. 1980) (employer

expressly disclaimed possibility of disciplinary action; *held*, no right to union representation). Nor was this a "run-of-the-mill" shop floor conversation in which the employee could not reasonably fear some adverse consequences, *see Weingarten, supra*, 420 U.S. at 257–58, 95 S.Ct. at 963. The interview was held in a separate building away from Daley's usual workplace, under oath, and was conducted by two trained investigators. On this record, we find there is substantial evidence to support the FLRA's determination that Daley could have reasonably feared discipline as a consequence of the interview and consequently that he was entitled to have a union representative present at the interview.

*Review Denied; Enforcement Granted.*